UNITED STATES DISTRICT COURT                    <u>FOR ONLINE PUBLICATION ONLY</u>
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------x
                                                    :
UNITED STATES OF AMERICA,                           :
*ex rel* ELIZABETH M. RYAN,                         :
                                                    :
                        Plaintiffs,                 :
                                                    :
            -against-                               :
                                                    :
STATEN ISLAND UNIVERSITY                            :
HOSPITAL; GILBERT LEDERMAN;                         :       MEMORANDUM
GILBERT LEDERMAN, M.D., P.C.;                       :       <u>AND ORDER</u>
PHILIP JAYSILVERMAN,                                :
                                                    :       04-CV-2483 (JG) (CLP)
                        Defendants.                 :
--------------------------------------------------------x
                                                    :
GILBERT LEDERMAN; GILBERT                           :
LEDERMAN, M.D., P.C.,                               :
                                                    :
                        Third-Party Plaintiffs,     :
                                                    :
            -against-                               :
                                                    :
REGENCY ALLIANCE SERVICES, INC.;                    :
PHYSICIANS MANAGEMENT GROUP,                        :
                                                    :
                        Third-Party Defendants.     :
                                                    :
--------------------------------------------------------x

A P P E A R A N C E S :

        LORETTA E. LYNCH
                United States Attorney
                Eastern District of New York
                271 Cadman Plaza East
                Brooklyn, New York 11201
        By:     Laura D. Mantell
                Richard K. Hayes
                *Attorneys for Plaintiff United States*

LIFFLANDER & REICH LLP
    1221 Avenue of the Americas
    New York, New York 10020
By:   Richard I. Reich
    Roman Gitnik
    *Attorneys for Plaintiff Elizabeth M. Ryan*

TRACY & STILWELL, P.C.
    1688 Victory Boulevard
    Staten Island, New York 10314
By:   John J. Tracy
    *Attorney for Defendants/Third-Party Plaintiffs Gilbert Lederman and Gilbert Lederman, M.D., P.C.*

SILLS CUMMIS & GROSS, P.C.
    One Rockefeller Plaza
    New York, New York 10020
By:   Herve Gouraige
    Katherine Marguerite Lieb
    *Attorneys for Third-Party Defendant Regency Alliance Services, Inc.*

JOHN GLEESON, United States District Judge:

        This action was commenced on June 6, 2004 when relator Elizabeth M. Ryan filed a complaint against Staten Island University Hospital ("SIUH"), Gilbert Lederman ("Lederman"), Gilbert Lederman, M.D., P.C. ("Lederman P.C."), and Philip Jay Silverman pursuant to the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3730(b). The relator's complaint alleges, *inter alia*, that beginning in the mid-1990s, the defendants performed more than 10,000 Stereotactic Body Radiosurgery ("BRS") procedures on their patients, that these procedures were not approved for reimbursement by Medicare, but that Lederman and Lederman P.C. (collectively, the "Lederman defendants") submitted thousands of false claims for Medicare reimbursement. On July 31, 2008, the United States intervened in the action by filing a complaint against the Lederman defendants. The government asserts two claims under the FCA, pursuant to 31 U.S.C. §§ 3729(a)(1) and 3729(a)(2), and two common law claims for unjust enrichment and payment by mistake.

On November 1, 2010, the Lederman defendants filed a third-party complaint against Regency Alliance Services, Inc. ("Regency") and Physicians Management Group ("PMG"), alleging that Regency and PMG were coding and billing experts working for the Lederman defendants during the relevant period, and that the allegedly false claims were submitted by Regency and PMG on behalf of the Lederman defendants. The Lederman defendants seek contribution and indemnification from the third-party defendants in the event that they are held liable for unjust enrichment or payment by mistake. PMG has not filed a motion to dismiss or otherwise appeared in this action. On March 24, 2011, Lederman filed a motion for entry of default against PMG. The Clerk entered default on April 11, 2011. On February 25, 2011, Regency filed a motion to dismiss the Lederman defendants' third-party complaint, or in the alternative, to vacate my October 18, 2010 order granting the Leaderman defendants leave to implead Regency. Oral argument was heard on the motion on April 22, 2011. For the reasons stated below, Regency's motion to dismiss is granted. In addition, the Lederman defendants' claims for contribution and implied indemnity against PMG are dismissed.

BACKGROUND[1]

A.    *The Medicare Program and Its Treatment of Stereotactic Radiosurgery*

The Medicare program was established by enactment of Title XVIII of the Social Security Act. Part B of the Medicare program provides federal funding for certain physician services provided to Medicare beneficiaries. Claims under Part B for Medicare payment for physician services are administered by private carriers ("Part B carriers"), which enter into contracts with the Secretary of Health and Human Services. Physicians bill their services to

---

[1]    Statements of fact in parts A and B of this section are taken from the plaintiffs' complaints and do not represent the findings of the Court.

these carriers using standard 5-digit billing codes, which are based on codes designated by the American Medical Association (AMA) called "Physicians' Current Procedural Terminology" ("CPT") codes. Part B carriers determine the reimbursement amount of each claim based on the lesser of the actual charge and a standardized fee schedule for the appropriate CPT code.

Guidance as to whether a particular service is covered under Part B is provided by Local Coverage Determinations ("LCDs") issued by Part B carriers. Empire Medicare Services ("Empire"), the Part B carrier to which the Lederman defendants submitted their Medicare claims during the relevant period, issued two LCDs in 1996 and 2001, respectively, which advised physicians to use CPT code 61793 when billing for stereotactic radiosurgery and which indicated that coverage for stereotactic radiosurgery was limited to treatment of diseases above the neck. The 2001 LCD also instructed that code 61793 could be billed only once per course of treatment, regardless of the number of sessions required. The AMA provided the same instruction in its CPT code book. The AMA also prescribed that a second code, 77432, which applied to the radiation treatment management of cerebral lesions, could be used only once per treatment. No CPT code covered BRS during the period relevant to this action.

B.    *Defendants' Alleged Activities*

At the time of the events giving rise to this action, Lederman was the Director of Radiation Oncology for SIUH, and Silverman was an attending physician practicing in the Department of Radiation Oncology at SIUH. Lederman P.C. was a professional corporation owned exclusively by Lederman, through which he billed Medicare for professional services that he and other oncologists provided at SIUH. From approximately 1996 through the end of 2003, the defendants created and disseminated materials falsely representing that BRS was a successful treatment for many forms of primary and metastatic cancers, including lung, liver, bladder,

pancreatic, and colon cancers. The defendants also offered cancer patients free consultations in which they provided false information concerning the effectiveness of BRS. During the relevant period, the defendants administered BRS to a variety of below-the-neck cancers in thousands of patients, and, although they were aware of Empire's LCDs, they submitted falsely coded bills for Medicare reimbursement for this treatment. On December 5, 2008, the government provided a list of 364 claims it contends were fraudulent. The list included 26 claims under billing code 61793 and 320 claims under billing code 77432. As a result of these claims, defendants received Medicare reimbursement to which they were not entitled.

C.      *The Plaintiffs' Claims for Relief*

The relator filed her complaint on June 6, 2004 in accordance with the FCA's *qui tam* provisions, 31 U.S.C. § 3730(b). The complaint lists six counts, including Count III for false claims for payment for services not reasonable and necessary for the treatment of an illness in violation of Title XVIII of the Social Security Act § 1862(a)(1)(A), and Count V for conspiracy to defraud and to submit false claims under 31 U.S.C. § 3792. On February 28, 2008, the United States filed notice pursuant to the FCA, 31 U.S.C. §§ 3730(b)(2) and 3730(b)(4)(A), that it intended to intervene only with respect to the relator's third and fifth counts, and only as against SIUH and the Lederman defendants. On July 31, 2008, the United States filed a complaint against just the Lederman defendants. The complaint asserts four causes of action: (1) knowingly making false claims for payment, in violation of the FCA, 31 U.S.C. § 3729; (2) making false statements, in violation of the FCA, 31 U.S.C. § 3792(a)(2); (3) unjust enrichment by receipt of reimbursement for services not covered; and (4) payment under mistake of fact concerning coverage of the treatments for which reimbursements were received.

D.   *The Settlement Agreement Between the Plaintiffs and SIUH*

On September 5, 2008, the government, the relator and SIUH entered into a settlement agreement that was approved by the Court on September 10, 2010 ("the SIUH settlement"). SIUH agreed to pay the United States $25,022,76.00 plus interest, of which the United States agreed to pay the relator $3,753,414.00. SIUH further agreed to pay $160,000 for the relator's expenses and attorney's fees and costs. In exchange, the government and the relator agreed to release SIUH and SIUH's sole corporate member, "together with their current and former officers, directors, trustees, agents and employees (excluding Gilbert Lederman, Gilbert Lederman, M.D., P.C., and Philip Jay Silverman), and their subsidiaries and the successors and assigns of any of them," from liability for all claims asserted in this case. On August 7, 2009, the United States voluntarily dismissed its claims against SIUH with prejudice.

E.   *Relator's Partial Voluntary Dismissal*

On April 14, 2009, the relator voluntarily dismissed, without prejudice, Counts I, II, IV, and VI of her complaint as against all defendants. The relator also dismissed without prejudice all claims against Silverman. On June 1, 2009, the relator agreed by stipulation to dismiss all portions of her remaining counts – Counts III and V – as to which the United States had not intervened.

F.   *The Lederman Defendants' Third-Party Complaint*

At a conference on October 8, 2010, the Lederman defendants sought leave to amend their complaint to implead Regency and PMG. Rather than litigate the futility of the proposed third party-complaint in the absence of the proposed third-party defendants, I granted leave to file an amended complaint without prejudice to any challenge any part might wish to make to the third-party claims. On November 1, 2010, the Lederman defendants filed their third-

party complaint, alleging that Regency and PMB were coding and billing experts and that they submitted the disputed claims for reimbursement on behalf of the Lederman defendants. The Lederman defendants contend that "if the plaintiff sustained damages as indicated in the complaint . . . then such damages were caused in whole or in part by the negligence, culpable conduct, and incorrect or improper billing and coding by the third-party defendants[.]" Third-Party Compl. ¶ 23. The third-party complaint further alleges that the Lederman defendants entered into written indemnification agreements with Regency and PMG. Accordingly, the third-party complaint asserts causes of action for contribution, implied indemnification, and contractual indemnification to offset any recovery by the government for unjust enrichment or payment by mistake.

G.      *Regency's Motion to Dismiss*

On February 25, 2011, Regency filed a motion to dismiss the Lederman defendants' third-party complaint.[2] It argues that (1) the allegations in the third-party complaint are not pled with sufficient specificity to state a claim for relief; (2) the FCA bars third-party claims for indemnification and contribution; (3) the government's common law claims are based on the same factual allegations underlying the FCA claims, and allowing contribution or indemnification for the common law claims would frustrate the purposes of the FCA; (4) the contribution claim is barred by the SIUH settlement; (5) the third-party complaint fails to state a claim for common law indemnification; (6) the third-party complaint fails to identify any written agreement giving rise to contractual indemnification; and (7) the third-party complaint is not timely.

On April 21, 2011, I issued an order directing the parties to be prepared at oral argument to address whether contribution and common law indemnity can ever be available to a

---

[2]      The government noted its support of Regency's motion by letter dated February 25, 2011.

defendant held liable under a theory of unjust enrichment or payment by mistake. At oral

argument the following day, Regency presented the seven arguments listed above and also

argued that contribution and indemnity are not available to a defendant facing liability for unjust

enrichment or payment by mistake. The Lederman defendants presented me with three New

York state cases that they read to suggest contribution and implied indemnity might be available

in such cases.[3]

In their opposition to the motion to dismiss, and again at oral argument on April

22, 2011, the Lederman defendants agreed that indemnification and contribution may not be

sought for liability pursuant to the FCA and clarified that they seek contribution and

indemnification only with respect to any liability they face pursuant to the government's

common law claims. The Lederman defendants have also conceded that no written agreement

with Regency provides a basis for contractual indemnity. For that reason, the claim against

Regency for contractual indemnification is dismissed. For the reasons stated below, the claims

for contribution and implied indemnity are also dismissed as against both third-party defendants.

## DISCUSSION

A.      *Regency's Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)*

1.      *The Rule 12(b)(6) Legal Standard*

The substantive merit of the Lederman defendants' claims "depends on the

federal or state theory of contribution [or] indemnity . . . asserted in the third party complaint."

*Crews v. County of Nassau*, 612 F.Supp.2d 199, 204 (E.D.N.Y. 2009). To survive a motion

under Rule 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual

---

[3]      These cases are *AG Capital Funding Partners, L.P. v. State Street Bank and Trust Co.*, 5 N.Y.3d
582, 594 (2005); *American Home Assur. Co. v. Nausch, Hogan & Murray, Inc.*, 897 N.Y.S.2d 413 (1st Dep't 2010);
and *Broyhill Furniture Industries, Inc. v. Hudson Furniture Galleries, LLC*, 877 N.Y.S.2d 72 (2009). They are
addressed below. *See infra*, notes 6 and 10.

matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A claim is facially plausible only if the pleaded facts permit a court to reasonably infer that the plaintiff is entitled to relief. *Id.*

    2.    *The Government's Common Law Claims*

Under New York law, when one party mistakenly makes a payment, and another benefits from that payment, a quasi-contractual relationship is created, which gives rise to an obligation to pay. *Banque Worms v. BankAmerica Int'l*, 77 N.Y.2d 362, 366 (1991) ("'[I]f A pays money to B upon the erroneous assumption of the former that he is indebted to the latter, an action may be maintained for its recovery[.]'" (quoting *Ball v. Shepard*, 202 N.Y. 247, 253 (1911)); *Cohen v. City Co. of New York*, 283 N.Y. 112, 115 (1940) (" . . . 'Having money that rightfully belongs to another, creates a debt . . . .'" (quoting *Byxbie v. Wood*, 24 N.Y. 607, 610 (1862))). The government's common law claims for unjust enrichment and payment by mistake are premised on this principle. They are claims for restitution or quasi-contract for which recovery is to be had *ex aequo et bono*, that is, according to what is equitable and good. *See* 22A N.Y. Jur. *Contracts* § 516 (2010).

The elements of a claim for payment by mistake are that plaintiff made a payment under a mistaken apprehension of fact, that defendant derived a benefit as a result of this mistaken payment, and that equity demands restitution by defendant to plaintiff. *See Ball*, 202 N.Y. at 253; *Blue Cross of Cent. N.Y., Inc. v. Wheeler*, 461 N.Y.S.2d 624, 626 (4th Dep't 1983). A claim for unjust enrichment consists of three elements: "that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004) (citing *Clark v. Daby*, 751 N.Y.S.2d 622, 623 (2002)); *see also*

*Leibowitz v. Cornell Univ.*, 584 F.3d 487, 509 (2d Cir. 2009). Accordingly, both common law

claims turn on whether the Lederman defendants have benefitted from what is rightfully the

government's such that equity and good conscience demand restitution. *See* 22A N.Y. Jur.

Contracts § 516; *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215 (2007) ("It is well settled that

'[t]he essential inquiry in any action for unjust enrichment or restitution is whether it is against

equity and good conscience to permit the defendant to retain what is sought to be recovered.'"

(quoting *Paramount Film Distrib. Corp. v. State of New York*, 30 N.Y.2d 415, 421 (1972), *cert.*

*denied*, 414 U.S. 829 (1973)) (brackets in the original)); *Banque Worms*, 77 N.Y.2d at 366 (the

rule that a mistaken payment must be restored "has been applied where the cause of action has

been denominated as one for money had and received, for unjust enrichment or restitution, or

upon a theory of quasi contract" (citations omitted)); *Mfrs. Hanover Trust Co. v. Chem. Bank*,

559 N.Y.S.2d 704, 708 (1st Dep't 1990) ("Actions to recover money paid under mistake are

frequently styled as actions for money had and received, the basis of which is that the defendant

has received money which, in equity and good conscience, should have been paid to or on behalf

of the plaintiff and that, under such circumstances, the defendant ought to pay it over." (citations

omitted)).

   To prevail on its common law claims, the government need not show that the

Lederman defendants engaged in wrongdoing or breached a duty. *See Diamond*, 186 N.Y.S.2d

at 918 (a showing of negligence is not necessary to make out a claim for payment by mistake);

*Simonds v. Simonds*, 45 NY.2d 233, 242 (1978) ("Unjust enrichment . . . does not require the

performance of any wrongful act by the one enriched . . . . Innocent parties may frequently be

unjustly enriched." (citations omitted)). A defendant that has received a mistaken payment may

be required to restore the unearned funds to the payer even if the mistake was caused by the

negligence or wrongdoing of another party. *See, e.g.*, *Hathaway v. Delaware County*, 185 N.Y. 368 (1906). "[T]he fact that money was transferred directly from [plaintiff's possession] to [defendant's] (albeit by a third party) is enough to sustain a claim for unjust enrichment." *Newbro v. Freed*, 06-CV-1722, 2007 WL 642941, at *2 (2d Cir. Feb. 27, 2007).

However, the government will not be able to recover if the Lederman defendants can demonstrate that "circumstances exist which make such recovery inequitable." *Hathaway*, 185 N.Y. at 371. For instance, where a defendant has "changed its position to its detriment in reliance upon the mistake so that requiring that it refund the money paid would be 'unfair,' recovery has been denied." *Banque Worms*, 77 N.Y.2d at 366 (citing *Paramount Film Distrib. Corp.*, 30 N.Y.2d at 422; *Ball*, 202 N.Y. at 254). And if the Lederman defendants did not themselves receive the payments at issue, they will not be required to make restitution. *See Excalibur Systems, Inc. v. Aerotech World Trade, Ltd.*, No. 98-CV-1931 (JG), 1999 WL 1281496, at *2 (E.D.N.Y. Dec., 30, 1999).

3.  *The Lederman Defendants' Claim for Contribution*

New York law permits claims for contribution in actions based in tort. Article 14 of the CPLR provides for contribution claims among "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death." N.Y. CPLR § 1401. As its text makes clear, this statute can be invoked only by a party seeking to offset tort liability. *See SSDW Co. v. Feldman-Misthopoulos Assoc.*, 542 N.Y.S.2d 565, 566 (1st Dep't 1989 ("It is immediately apparent from reading CPLR 1401, that a claim for contribution is limited to actions for 'personal injury, injury to property or wrongful death,' *viz.*, actions sounding in tort, even where the basis for contribution is the contractual relationship among the parties." (citing *County of Westchester v. Welton Becket Assocs.*, 478 N.Y.S.2d 305 (1984), *aff'd*,

66 N.Y.2d 642 (1985))). New York courts have also refused to recognize common law contribution claims in non-tort actions. *See Board of Educ. v. Sargent, Webster, Crenshaw & Foley*, 71 N.Y.2d 21 (1987) (no contribution for contract liability). This is because contribution was developed as a remedy for the unfairness that tort law frequently allows by holding one tortfeasor liable for injuries caused by a concurrent tortfeasor.

The principle that currently governs claims for contribution – that a loss should be apportioned among multiple tortfeasors who combined to cause an injury – was introduced into New York law by *Dole v. Dow Chemical Company*, 30 N.Y.2d 143 (1972), *superseded in part by* N.Y. Worker's Comp. Law § 11 (barring third-party actions against employers in absence of grave injury to employees). Prior to *Dole*, New York held concurrent tortfeasors jointly and severally liable, but CPLR § 1401 permitted contribution among tortfeasors only when they had been held liable to the same plaintiff in a single action. *See Dole*, 30 N.Y.2d at 148. *Dole* noted the inequity of a system in which a plaintiff could bring an action against one of multiple tortfeasors, and "the wrongdoer selected by the injured part for suit must have succeeded in avoiding any part of responsibility; and otherwise he would have to assume all of it without redress." *Id.* at 148. To eliminate this inequity, *Dole* recognized a common law claim for contribution (or "partial indemnity") among all joint tortfeasors. Article 14 of the CPLR was amended to codify this new concept of contribution. *See Board of Educ.*, 71 N.Y.2d at 26.

*Dole* makes clear that the impetus for allowing contribution claims was the inequity that otherwise might result from imposing joint and several liability on tortfeasors. *See id.* ("The policy consideration[] that underlay *Dole* [was] the need to liberalize the inequitable and harsh rules that once governed contribution among joint tort-feasors[.]"). Beginning with *Dole*, New York courts have made contribution available beyond the paradigm case of joint

tortfeasors liable to a single plaintiff for a common injury, *see Mas v. Two Bridges Assocs.*, 75

N.Y.2d 680, 689-90 (1990) (under a basic theory of contribution, tortfeasors' "common liability

to plaintiff is apportioned and each tort-feasor pays his ratable part of the loss"). They have

allowed claims for contribution where third-party defendants could not have been held directly

liable to plaintiffs,[4] *see, e.g.*, *Dole*, 30 N.Y.2d at 143 (in negligence action by decedent's estate,

defendant manufacturer of toxic chemical used by decedent in connection with employment

could seek contribution from decedent's employer even though employer could not be held liable

to estate in light of worker's compensation laws), *superseded by* N.Y. Worker's Comp. Law §

11, and even where third-party defendants did not owe duties to plaintiffs, *see, e.g.*, *Garrett v.

Holiday Inns, Inc.*, 58 N.Y.2d 253 (1983) (defendant motel in action by guests injured in fire

could seek contribution from municipality for negligently enforcing fire code, even where town

had been found to owe plaintiffs no duty). However, in each of these cases, the third-party

plaintiff faced liability in tort and sought contribution on the basis that the third-party defendant

possessed "an independent obligation to prevent foreseeable harm" and so "should be held

responsible for the portion of the damage attributable to his negligence, despite the fact that the

duty violated was not one owing directly to the injured person." *Garrett*, 58 N.Y.2d at 261.

In *Board of Education v. Sargent, Webster, Crenshaw & Foley*, the Court of

Appeals affirmed that contribution is available to tort defendants only, and it declined to extend

the right to contribution to a party facing liability for breach of contract. 71 N.Y.2d at 27-29; *see

also SSDW Co.*, 542 N.Y.S.2d 565; *17 Vista Fee Assocs. v. Teachers Ins. and Annuity Ass'n of

America*, 693 N.Y.S.2d 554 (1st Dep't 1999). The court reasoned that a defendant in a contract

action is in no danger of being held liable for more than it is fair for him to pay, and thus there is

---

[4]     For ease of discussion, I refer to the injured party as the "plaintiff," the party seeking contribution
as the "defendant" or "third-party plaintiff," and the party from which contribution is sought as the "third-party
defendant," even when those were not the parties' postures in the particular cases discussed.

no reason for allowing contribution. 71 N.Y.2d at 29 ("The policy considerations that underlay *Dole* – the need to liberalize the inequitable and harsh rules that once governed contribution among joint tort-feasors – are not pertinent to contract matters."). That rationale applies equally in this case, where the Lederman defendants cannot be held liable under the government's common law claims for more than is equitable.[5]

The common law claims asserted against the Lederman defendants are equitable claims in restitution or quasi-contract, premised on the principle that a plaintiff may recover if a defendant has benefitted at its expense and equity militates against permitting the defendant to retain the benefit. *See Banque Worms v. BankAmerica Intern.*, 77 N.Y.S.2d 362, 366 (1991). They are not tort claims, and by definition, they do not expose a defendant to more than his fair share of liability. Accordingly, the Lederman defendants may not assert a claim for contribution. *See* N.Y. CPLR § 1402 ("The amount of contribution to which a person is entitled shall be the excess paid by him over and above his equitable share of the judgment recovered by the injured party[.]"); *Schlimmeyer v. Yurkiw*, 374 N.Y.S.2d 427, 430 (3d Dep't 1975) (Article 14 of the CPLR "applies to contribution among tortfeasors, a right which arises only after one held liable has actually paid more than his equitable share").[6]

---

[5] In *Board of Education*, the Court of Appeals explained that the defendant in a contract action has had an opportunity to negotiate the scope of its exposure. That reasoning does not clearly apply in a quasi-contract setting like the one before me, but what is most significant about the position of the contract defendant is the fact that he does not face unfair exposure, not the reason for that circumstance. Fully applicable in this case is the broader principle expressed by the *Board of Education* court – that a claim for contribution may be brought only by a defendant facing liability for a larger portion of a plaintiff's injury than it is fair for him to pay.

[6] Two of three New York cases brought to the Court's attention by the Lederman defendants at the April 22, 2011 oral argument do not call for a contrary holding. (Neither does the third, which relates to the claim for implied indemnity, but that case is addressed in footnote 10, *infra*.) In *AG Capital Funding Partners, L.P. v. State Street Bank and Trust Co.*, the Court of Appeals reaffirmed that "[a] claim for contribution rises and falls based on the existence of separate tortfeasors." 5 N.Y.3d 582, 594 (2005). The court emphasized that the defendant/third-party plaintiff faced liability for breach of a duty that it alleged had been assumed by the third-party defendants. *Id.* ("[I]f [defendant] is found to have breached a duty and is held liable in the underlying action . . . then each of the third-party defendants may be liable as well . . . as it is alleged that all three third-party defendants assumed the duty that [defendant] may have had[.]"). But the government's common law claims here require only a showing that the Lederman defendants received unearned funds that, in equity, should be returned. The government

14

4.      *The Lederman Defendants' Claim for Indemnification*

New York courts recognize a "fundamental distinction between contribution and indemnity," *McDermott v. City of New York*, 50 N.Y.2d 211, 216 (1980) (internal quotation marks omitted), and in some cases, a claim for implied indemnity may lie where one for contribution does not, *see, e.g.*, *17 Vista*, 693 N.Y.S.2d 554.[7]  This is not such a case.  A claim for indemnity is incompatible with the government's common law causes of action.  Implied indemnity, unjust enrichment, and payment by mistake all operate toward the same end – the equitable allocation of a loss.  *See Mas*, 75 N.Y.2d at 690 (implied indemnity is a "concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other"); *McDermott*, 50 N.Y.2d at 216-17 (a duty to indemnify is found by courts where it is necessary to "prevent unjust enrichment [by] placing the obligation where in equity it belongs"); *Maruo v. McCrindle*, 419 N.Y.S.2d 710, 712 (2d Dep't 1979) (the precepts of implied contract "reflect an equitable abhorrence of unjust enrichment"), *aff'd*, 59 N.Y.2d 719 (1980).   Indemnity,which is used to restore equity when one party is tasked with

---

is not required show that those funds were received because Lederman breached a duty, and it is therefore irrelevant whether Regency is responsible for any breach the government might have had to prove if it had brought a negligence claim.

        In *American Home Assur. Co. v. Nausch, Hogan & Murray, Inc.*, the Appellate Division, First Department affirmed the trial court's denial of a motion to dismiss claims for common law indemnity and contribution where the underlying judgment was for rescission of a contract.  897 N.Y.S.2d 413 (1st Dep't 2010).  The court found that "[third-party] plaintiffs do not really seek contribution for rescission" but for liability for a single injury resulting from the same set of misrepresentations allegedly committed by the third-party defendants.  *Id.* at 416.  The court rejected the third-party defendants' argument that rescission of the contract had "merely return[ed] the parties to the status quo, rather than awarding damages," because the third-party plaintiffs "actually had to cover far more of the underlying losses than they would have but for [third-party] defendants' tortious conduct.  *Id.* at 416-17.  That strikes me as a straightforward application of the rationale of *Dole v. Dow Chemical Company*, 30 N.Y.2d 143, discussed *supra*.  The case before me is easily distinguished, as recovery by the government on its common law claims would return the parties to an equitable status quo ante, and Regency's misdeeds, if any, will not subject the Lederman defendants to suffer a penalty greater than the disgorgement of any funds they hold to which they have never been entitled.

        [7]      For instance, recovery on a claim for implied indemnification may be had where the primary liability is for breach of contract.  *17 Visa*, 693 N.Y.S.2d 554 (indemnity allowed in a contract case where third-party defendant has "assumed exclusive responsibility" for the duty to plaintiff that third-party plaintiff has allegedly breached).  *Cf. Board of Educ.*, 71 N.Y.2d at 29 (dismissing claims for implied indemnity in a contract case but granting leave to replead).

another's fault through operation of law,[8] has no place where liability is imposed for unjust enrichment or payment by mistake. These common law claims, which sound in equity, not law, do not allow for an unfair distribution of liability.

Unlike claims in contract and tort, claims for unjust enrichment and payment by mistake do not require a showing of fault that can be disproportionately attributed. *See Diamond*, 186 N.Y.S.2d at 918 (a showing of negligence is not necessary to make out a claim for payment by mistake); *Simonds*, 45 NY.2d at 242 ("Unjust enrichment . . . does not require the performance of any wrongful act by the one enriched . . . . Innocent parties may frequently be unjustly enriched." (citations omitted)). Even if Regency breached a duty that was owed to the government by the Lederman defendants and assumed by Regency,[9] the government's common law claims do not rely on proving a breach of that duty. Instead, they rely on showing that the Lederman defendants received an unearned benefit that should be restored. If the Lederman defendants have not received such a benefit, or if they have but repayment would be inequitable, liability will not be imposed. *See Hatahway*, 185 N.Y. 368, 370 (1906) (plaintiff cannot recover for mistaken payment where defendant can show "circumstances . . . which make such recovery inequitable"); *Bank Saderat Iran v. Amin Beydoun, Inc.*, 555 F.Supp., 770, 774 (S.D.N.Y. 1983) (plaintiff could not recover on claim of mistaken payment where defendant was able to prove that he changed his position in reliance of the payment and could not be made whole if restitution were ordered). Accordingly, the Lederman defendants' asserted basis for a right to indemnification – that they face liability for an amount that cannot be borne in fairness – is a

---

[8]      *See Mas*, 75 N.Y.2d at 690 ("Implied indemnity is a restitution concept . . . [g]enerally . . . available in favor of one who is held responsible solely by operation of law because of his relation to the actual wrongdoer[.]"); *Board of Educ.*, 71 N.Y.2d at 29 (implied indemnity attaches where one party has been "unfairly required to discharge a duty that should have been discharged by another, such that a contract to indemnify should be implied by law").

[9]      *See, e.g., Mas*, 75 N.Y.2d 680 (building owner held liable to tenant injured as result of elevator malfunction could seek common law indemnity from elevator maintenance company, which had agreed to service elevator daily).

defense against the government's claims in equity. If the Lederman defendants are found liable for unjust enrichment or payment by mistake, they will be unable to make out a claim for implied indemnity.[10] Their implied indemnity claim is therefore dismissed.

B. *Regency's Motion to Vacate the Order Granting Leave to Implead Under Rule 14(a)*

1. *The Rule 14(a) Legal Standard*

Rule 14(a) allows a defendant to "serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it," Fed. R. Civ. P. 14(a)(1), but "'the right to implead third parties is not automatic, and the decision whether to permit impleader rests within the sound discretion of the district court,'" *Falcone v. MarineMax, Inc.*, 659 F.Supp.2d 349, 401-02 (E.D.N.Y. 2009) (quoting *Consolidated Rail Corp. v. Metz*, 115 F.R.D. 216, 218 (S.D.N.Y. 1987)); *see also East Hampton Dewitt Corp. v. State Farm Mut. Auto Ins. Co.*, 490 F.2d 1234, 1246 (2d Cir. 1973) (finding district court acted "well within the discretion afforded by F.R.Civ.P. 14(a)" in denying as untimely defendant's motion for leave to implead third-party defendant). In determining whether to allow the filing of a third-party complaint – or to vacate an order permitting such a filing – a district court considers: "(1) whether the movant deliberately delayed or was derelict in filing the motion; (2) whether impleading would delay or unduly complicate the trial; (3) whether impleading would prejudice the plaintiff or third-party

---

[10]    At the oral argument of the motion, the Lederman defendants presented a decision by the Appellate Division, First Department, which they presumably read to suggest that implied indemnity is available where the underlying claims are for unjust enrichment and payment by mistake. However, in *Broyhill Furniture Industries, Inc. v. Hudson Furniture Galleries, LLC*, the Appellate Division held that a defendant/third-party plaintiff had failed to state a claim for implied indemnity. 877 N.Y.S.2d 72 (2009). The plaintiff and defendant in that case had obtained security interests in the same collateral. The owner of the collateral had paid money to the defendant in satisfaction of its secured loan. The plaintiff sought a declaratory judgment against the defendant as to the priority of its interest in the collateral, and it sought recovery of the money paid to the defendant by the owner of the collateral. The defendant brought a third-party claim against the owner of the collateral for implied indemnity. The trial court granted summary judgment against the defendant on its third-party claim for implied indemnity, and the Appellate Division affirmed. The Appellate Division held that the defendant/third-party plaintiff had not alleged that its liability to plaintiff, if any, was purely vicarious, or that the third-party defendant owed a duty to either of the other two parties. *Id.* at 75. The court's opinion does not address the questions discussed in this memorandum and order, and it offers no indication that a claim for implied indemnity might ever be available in a case like the one now before me.

defendant; and (4) whether the proposed third-party complaint states a claim upon which relief can be granted." *Greene v. City of New York*, No. 08-CV-243 (RJD) (CLP), 2010 WL 1936224, at *2 (E.D.N.Y. May 12, 2010).

2.    *Untimeliness of the Third-Party Complaint*

The Lederman defendants were served with the government's complaint on August 1, 2008, *see* Gov.'s Cert. Serv. Lederman Defs., Aug. 1, 2008, ECF No. 17, and did not show an intent to file a third-party complaint until September 29, 2010, *see* Defs.' Pre-Mot. Letter Requesting Leave Implead, Sept. 29, 2010, ECF No. 68.  On December 5, 2008, the government provided the Lederman defendants with a list of the 364 claims it contends were fraudulent.  By that date, the Lederman defendants were aware of the precise time period during which the allegedly false claims for reimbursement were filed, and they knew of their relationships with the third-party defendants during that period.  Yet they waited two years before seeking to involve the third-party defendants in the action.  During that time, they and the plaintiffs have exchanged tens of thousands of pages of discovery and have conducted fact depositions.

"The defendant[s] bear[] the burden of showing excuse for the delay."  *In re Agent Orange Product Liability Litigation*, 100 F.R.D. 778, 781 (E.D.N.Y. 1984).  The defendants have provided no reasonable explanation for the two-year period of inaction.  At oral argument on April 22, 2011, counsel for the Lederman defendants stated that they did not focus on the government's common law causes of action until the information exchanged during discovery suggested that they might not be found liable for violations of the FCA, and that liability might therefore turn on the government's equitable state-law claims.  That explanation is unreasonable.  The Lederman defendants have known since they received service of the

government's complaint on August 1, 2008 that claims for unjust enrichment and payment by mistake had been asserted against them. Defendants' failure to attribute significance to those claims for two years is no excuse for imposing on the plaintiffs the delay that would be occasioned by introducing additional parties into the proceedings at this stage. *See Hicks v. Long Island R.R.*, 165 F.R.D. 377, 380 (E.D.N.Y. 1996) ("Defendant's excuse that he was too busy with other priorities and was unable to give the matter his attention in a timely manner is wholly unpersuasive.").

The government indicated at oral argument that if I permit the third-party claims to proceed, it will move to sever those claims and have them tried separately from the rest of the action. Such a motion would present me with the option of delaying the entire action to allow discovery by and against Regency, or proceeding with two trials. Either option would defeat the purpose of Rule 14(a), which is "to promote judicial economy," *Falcone*, 659 F.Supp.2d at 401. Therefore, if contribution or indemnification were available to the Lederman defendants, I would grant Regency's motion to vacate my October 18, 2010 order granting the Lederman defendants leave to file a third-party complaint and strike the third-party claims pursuant to Fed. R. Civ. P. 14(a)(4) for untimely filing. However, because they are clearly meritless, adjudicating the third-party claims against Regency on the merits causes no undue delay. Accordingly, the Lederman defendants' claims against Regency are dismissed for failure to state a claim.

C.    *The Claims Against PMG*

PMG has not filed a motion to dismiss or otherwise answered the Lederman defendants' third-party complaint. On April 11, 2011, the Clerk made an entry of default against PMG. I now dismiss the claims asserted against PMG for contribution and implied indemnification on the basis that it would be "incongruous and illegal . . . to hold, that because

one defendant had made default, the plaintiff should have a decree even against him, where the court is satisfied from the proofs offered by the other, that in fact the plaintiff is not entitled to a decree." *Frow v. De La Vega*, 82 U.S. 552, 554 (1872) (internal quotation marks omitted).

 Although default has been entered against PMG, it does not follow automatically that the Lederman defendants will be entitled to default judgment. Default judgment may be denied where the complaint fails to state a claim. *Jin Yung Chung v. Sano*, No. 10-CV-2301 (DLI) (CLP), 2011 WL 1298891, at *2 (E.D.N.Y. March 31, 2011); *see also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) ("[A] district court has discretion under Rule 55(b)(2) once a default is determined to require proof of necessary facts and need not agree that the alleged facts constitute a valid cause of action[.]" ); *Orellana v. Wourld Courire, Inc.*, No. 09-CV-576 (NGG) (ALC), 2010 WL 3861013, at *2 (E.D.N.Y. Sept. 28, 2010) ("A court should deny a motion for entry of a default judgment if the facts a plaintiff alleges in his complaint, taken to be true, fail to state a valid cause of action upon which the relief sought can be granted."). After providing the Lederman defendants with an opportunity to be heard, I conclude that there is no possible set of facts that would entitle the Lederman defendants to recover in contribution or implied indemnity from any party, including PMG, to offset any liability to the government for unjust enrichment or payment by mistake. Accordingly, dismissal of these third-party claims as against all defendants is appropriate. *See Leonhard v. U.S.*, 33 F.2d 599, 609, n.11 ("The district court has the power to dismiss a complaint sua sponte for failure to state a claim." (citing *Robins v. Rarback*, 325 F.2d 929 (2d Cir. 1963), *cert. denied*, 379 U.S. 974 (1969))). *Cf. Perez v. Ortiz*, 849 F.2d 793, 797-98 (2d Cir. 1988) ("*sua sponte* dismissals may be appropriate in some circumstances" but *sua sponte* dismissal without giving plaintiffs notice and an opportunity to be heard was erroneous).

CONCLUSION

For the foregoing reasons, the Lederman defendants' third-party claims against Regency are dismissed. The Lederman defendants' third-party claims against PMG for contribution and implied indemnity are also dismissed.

So ordered.

John Gleeson, U.S.D.J.

Dated: May 13, 2011
      Brooklyn, New York