UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------X
UNITED STATES *ex rel.*
ELIZABETH M. RYAN,

              Plaintiff,

-against-

STATEN ISLAND UNIVERSITY
HOSPITAL, et al.,

              Defendants.
------------------------------------------------X

**MEMORANDUM
AND    ORDER**

04 CV 2483 (JG)

On June 16, 2004, plaintiff Elizabeth Ryan ("Ryan" or "relator") commenced this action on behalf of the United States of America (the "Government"), pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. §§ 3729 et seq. ("FCA"), against Gilbert Lederman ("Dr. Lederman"), Gilbert Lederman, M.D., P.C. ("Lederman P.C.") (collectively, "defendants" or "Lederman"), Staten Island University Hospital ("SIUH" or the "Hospital"), and Philip Jay Silverman.[1] Plaintiff Ryan's Complaint alleges six causes of action arising out of defendants' alleged false statements and false claims regarding defendants' administration of stereotactic body radiosurgery ("BRS"), a method of radiation treatment for cancer patients.

On October 12, 2012, the Lederman defendants submitted a letter motion ("Defs.' Mot.") in support of their request to obtain discovery of two emails provided to the Government by the Government's rebuttal radiation oncology expert, Dr. Edward Shaw ("Dr. Shaw"), in which Dr. Shaw summarized his review of patient files conducted in 2006 (the "2006 email Review").

---

[1] On September 10, 2008, plaintiffs entered into a settlement agreement with SIUH, which resolved all of plaintiffs' claims against the Hospital. (Docket # 30). After the settlement agreement was executed, a Notice of Voluntary Dismissal of plaintiffs' claims against SIUH was entered on August 7, 2009. (Docket # 61).

1

Defendants also sought to question Dr. Shaw concerning conversations he had with billing and coding personnel at SIUH in preparation of the 2006 email Review. Although Dr. Shaw has produced an expert report (the "2012 Report") detailing the topics and opinions for which the Government intends to call him as a witness in the case against the Lederman defendants, defendants, in their motion, contend that Dr. Shaw's 2006 email Review "involve[d] the identical parties and issues." (Defs.' Mot. at 2). Defendants argue that the 2006 email Review is "discoverable since it goes directly to the witness's experience and knowledge of the issues of the subsequent" 2012 Report submitted by Dr. Shaw. (Id.) Further, defendants claim that "the discussions and information exchanged with the professional biller and department head affected [Dr. Shaw's] opinions concerning the billing and coding conclusions he reached [in the 2012 Report]." (Id.)

In response, the Government asserts that, in 2006, Dr. Shaw was retained only to assist in an investigation of allegations that defendant SIUH had submitted false claims to Part A of the Medicare program for reimbursement related to the provision of BRS. (Pl.'s Resp.[2] at 1-2). The Government claims that Dr. Shaw was engaged at that time "for the limited purposes of analyzing the frequency and dollar amount of the bills submitted to Medicare Part A for technical hospital services only" and that "his current role as a rebuttal expert did not rely at all on [this] earlier involvement in the case." (Id. at 2). Further, according to the Government, of the 300 Lederman Claim Patients, only one is "among the sample of SIUH Billing Claims reviewed by Dr. Shaw in 2006." (Id.) The Government also asserts that the 2006 email Review is protected

---

[2]Citations to "Pl.'s Resp." refer to the Government's Letter in Response to Defendants' Letter Motion, dated November 8, 2012.

from disclosure by the work product privilege under Federal Rule of Civil Procedure 26. (Pl.'s Resp. at 3).

On December 6, 2012, the Court Ordered the Government to produce the 2006 email Review for in camera inspection so the Court could determine the extent to which the 2012 Report contains all of the facts and data upon which Dr. Shaw relied in forming the opinions he will express as a witness in this case.

Having inspected the 2006 email Review and compared it with the 2012 Report, the Court finds that the 2006 email Review is protected work product and need not be disclosed. As discussed at greater length in the Court's December 6, 2012 Order, materials prepared by or at the request of an attorney in anticipation of litigation, including communications between experts and lawyers and drafts of expert reports or disclosures, are generally not subject to discovery. See Fed. R. Civ. P. 26. Such communications may be disclosed, however, where the communications identify facts, data, or assumptions provided by the attorney and considered by the expert in forming the opinions to be expressed or where the communications relate to expert compensation. Fed. R. Civ. P. 26(b)(4)(C). Here, the 2006 email Review is not comprised of facts, data, or assumptions considered by Dr. Shaw in forming the opinions about which he will be testifying, because the 2006 email Review relates to a different set of medical charts than the charts that form the basis of the 2012 Report and about which Dr. Shaw will testify. Moreover, the 2006 email Review focuses on issues related to the Government's claims against SIUH and not the Lederman defendants.

However, the Court finds that, to the extent that Dr. Shaw reviewed the records of any patients treated by Dr. Lederman or Lederman P.C. when preparing the 2006 email Review, his

3

exposure to these records may have influenced his views about whether the Lederman defendants prescribed medically unnecessary treatment to their patients or submitted improper billing codes to Medicare. As such, Dr. Shaw's knowledge about Lederman patients' charts, gained during the Government's consultation with him in 2006, may have provided factual background which colored the testimony that Dr. Shaw will proffer in the Government's case against the Lederman defendants. Since it is undisputed that Dr. Shaw, as a retained expert, must disclose the basis and reasons for the opinions he will express and the facts or data considered in forming them, see Fed. R. Civ. P. 26(a), the Government is Ordered to provide the names of any Lederman patients whose charts were reviewed by Dr. Shaw as part of the 2006 email Review.

The Court notes that, while the Government has claimed that only one of the 300 Lederman Claim Patients is among the sample of SIUH billing claims reviewed by Dr. Shaw in 2006, Dr. Shaw's own deposition testimony seems to contradict this contention. For example, when asked about the 2006 email Review, Dr. Shaw testified that the Government provided him with medical records "which included professional notes from Dr. Lederman and his colleagues." (Shaw Dep.[3] at 26 ¶¶ 12-21). Accordingly, the Government is directed to ensure that it provides the names of any patients treated by Dr. Lederman or Lederman P.C. whose charts were reviewed by Dr. Shaw in 2006 and to submit a sworn statement to that effect.

Similarly, while Dr. Shaw's conversations with SIUH personnel regarding billing and coding practices may have been limited to the practices and coding procedures of the Hospital, defendants are entitled to learn whether the SIUH personnel provided any information to Dr.

---

[3]Citations to "Shaw Dep." refer to the deposition of Dr. Shaw, an excerpt of which was attached as Exhibit B to the Government's Response to the Lederman Defendant's October 12, 2012 motion.

Shaw about Dr. Lederman's or Lederman P.C.'s billing and coding practices since the Lederman defendants were affiliated with the Hospital and performed procedures for which the Hospital also submitted charges. Therefore, defendants are permitted to question Dr. Shaw concerning conversations he had with billing and coding personnel at SIUH in preparation of the 2006 email Review.

**SO ORDERED.**
Dated: Brooklyn, New York
January 15, 2013

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York