```
UNITED STATES DISTRICT COURT                    FOR ONLINE PUBLICATION
EASTERN DISTRICT OF NEW YORK
```

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>        Plaintiff,<br>*ex rel.* ELIZABETH RYAN,<br>        Relator,<br>   - versus -<br>GILBERT LEDERMAN and<br>GILBERT LEDERMAN, M.D., P.C.,<br>        Defendants. | ORDER<br><br>04-CV-2483 |

JOHN GLEESON, United States District Judge:

    I recently awarded summary judgment to the United States on several common law claims and granted summary judgment on most elements of the government's False Claims Act claims. *See* Summary Judgment Order, DE 190 (May 13, 2014). At the close of that opinion, I indicated that the remaining issues in the case (including damages and Lederman's mental state) would be resolved by bench trial. *Id.* at 16. Lederman has filed a letter arguing that the matter should instead be tried to a jury. *See* DE 192 (June 26, 2014).

    Some procedural history is relevant. When the case was first brought, it was filed as a qui tam action by the relator, Elizabeth Ryan, whose complaint requested a jury trial. *See* Ryan Complaint, DE 1, at 53. The government filed a notice of intent to intervene, and the case was unsealed, on February 28, 2008. *See* DE 8 (notice of partial intervention), DE 9 (order unsealing relator's complaint). The government filed a complaint in intervention on July 31, 2008, *see* DE 16, which did *not* request a jury. After a few consent extensions of time, Lederman answered the government's complaint on October 29, 2008, and did not request a jury trial in that pleading. *See* DE 35.

In April of 2009, pursuant to an agreement between the parties, the relator's complaint was dismissed without prejudice as to all counts except Counts III (violations of the FCA by submitting claims contrary to various provisions of the Social Security Act) and V (conspiracy to violate the FCA). *See* Stipulation, DE 45 (April 14, 2009), and Court's unnumbered entry of April 15, 2009 adopting that stipulation. Pursuant to a second stipulation six weeks later, the relator agreed to dismiss without prejudice the portions of Claims III and V as to which the government had declined to intervene. *See* DE 59 (June 1, 2009). The same stipulation also stated that the relator would consider Lederman's answer to the government's complaint a "sufficient response to relator's allegations for purposes" of Rule 12.

Lederman now requests a jury trial. He argues principally that the defendant in a case need not separately demand a jury trial when the plaintiff has already done so; instead, a party may rely on his adversary's demand. Here, he claims, Ryan's complaint demanded a jury trial, and he was entitled to rely on that demand.

In opposition, the government argues first that Lederman's demand is untimely under Rule 38(b). The government also argues that Lederman is not entitled to rely on Ryan's initial demand because, when it intervened in the case in mid-2008, the relator's complaint ceased to be operative, and the government's complaint in intervention became the sole operative pleading.

The government's first argument is easily disposed of. Although Lederman's letter, DE 192, was filed on ECF as a "jury demand," it is not a "jury demand" under Rule 38(b), which must be served on other parties "no later than 14 days after the last pleading directed to the issue is served." Fed. R. Civ. P. 38(b)(1). Rather, it is a letter arguing that Lederman is

entitled to rely on Ryan's initial jury demand. The government's arguments about untimeliness under Rule 38(b)(1) are therefore irrelevant.

The main issue is whether Lederman may now rely on Ryan's jury demand. In general, one party may rely on an adverse party's jury demand as to a particular claim (or, if the demand is general, all claims). *See, e.g., Gargiulo v. Delsole*, 769 F.2d 77, 79 (2d Cir. 1985) ("Plaintiffs were, of course, entitled to rely on defendants' jury demand to preserve their own right to a jury trial . . . ."). This reliance principle is partly codified by Rule 38(d), which states that "[a] proper demand may be withdrawn only if the parties consent." Fed. R. Civ. P. 38(d). Courts have occasionally found exceptions to this general rule, particularly in cases involving impleader actions. *See, e.g., BD ex rel. Jean Doe v. DeBuono*, 193 F.R.D. 117, 126-28 (S.D.N.Y. 2000) (third-party defendant on crossclaim for indemnification may not rely on plaintiff's jury demand, since the initial demand did not encompass that issue); *see also Rosen v. Dick*, 639 F.2d 82 (2d Cir. 1980). According to Wright & Miller, "[t]he exceptions to the principle that all parties may rely on one party's general demand are when that party's jury trial demand does not extend to issues raised between him and the party seeking to rely on the demand." 9 Wright & Miller, *Federal Practice and Procedure: Civil* § 2318 (3d ed. 2004).

The government does not dispute the general rule, nor does it argue that any exception as such applies. Instead, the government notes that when the United States elects to intervene in a qui tam action under the False Claims Act, "it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action." 31 U.S.C. § 3730(c)(1). Based on that provision, the government argues that, once it intervened, the original complaint ceased to operate; otherwise, the government would be "bound by" Ryan's "act" of demanding a jury trial.

I conclude that Lederman has the better argument. The relevant question now is not whether the government can be "bound by" the relator's original demand. Rather, the question is whether *Lederman* was entitled to *rely on* that demand. Under the Federal Rules, he was.[1] When the case was made public in 2008, the only document that was unsealed was the relator's original complaint. Lederman received that document, which requested jury trial on the claims that are now proceeding. No party ever moved to withdraw that jury demand on the consent of all parties, which would have been required under Rule 38(d) for withdrawal to be effective. The situation here therefore seems indistinguishable from a case in which the plaintiff demands a jury trial in an initial complaint, and then fails to demand a jury in an amended complaint. Under those circumstances, consistent with Rule 38(d), courts have held that other parties may still rely on the demand in the original complaint. *See, e.g., P.C. Data Centers of Pa., Inc. v. Fed. Express Corp.*, 113 F. Supp. 2d 709, 720-21 (M.D. Pa. 2000); *Chem. Bank v. Affiliated FM Ins. Co.*, 87 CIV. 0150 (VLB), 1994 WL 719681, at *8 (S.D.N.Y. Dec. 28, 1994) ("It is well settled that a proper jury demand survives subsequent amended pleadings to the extent that no new issues are asserted."); *Rosen*, 639 F.2d at 91-93.

It is true that Lederman answered only the government's complaint in intervention and did not answer the relator's complaint. The government cites *U.S. ex rel. Feldman v. City of New York*, 808 F. Supp. 2d 641, 649 (S.D.N.Y. 2011) for the proposition that Ryan lacked standing in the case once the government intervened. But the *Feldman* court relied in part on the fact that, at the time of its ruling, no non-intervened claims remained in the case. *See id*. Here, at the time Lederman answered, Ryan had not yet consented to the dismissal of all her non-intervened claims. Thus, even if *Feldman* is correct, it does not apply to this case.

---

[1] There is no question, of course, that Lederman would have been entitled to demand a jury trial on all of these claims himself when he answered. Equally, the government has no freestanding right to *prevent* the case from going to a jury trial. The right to jury trial is possessed equally by the parties.

(Moreover, it is not clear to me that, even if Ryan lacked standing as soon as the government intervened, Lederman was still not entitled to rely on Ryan's complaint.)

It is also true that Lederman has had several earlier opportunities to raise this issue. First, the government suggested in its summary judgment briefing that the case would proceed to trial (if at all) by the Court. *See* Government's Memorandum in Support of Summary Judgment, DE 169 at 1 n.1. Second, in my summary judgment order, I indicated the case would proceed to a bench trial. *See* Summary Judgment Order at 16. Third, at a May 28, 2014 status conference, I reiterated that the case would proceed to a bench trial. Lederman did not raise the question until a June 24, 2014 settlement conference before Magistrate Judge Pollak, and he then filed the instant "demand" on June 26. But under these circumstances, I do not see how Lederman could be held to have waived his jury rights by not contesting the matter earlier – after all, if his arguments to me are correct (as I have held they are), he has been entitled to rely on Ryan's demand since 2008.

Finally, even if all of the foregoing analysis is wrong, in light of Lederman's request, I would exercise my discretion under Rule 39(b) to try the case to a jury.

\* \* \*

One remaining issue is how to treat the damages and liability questions.  I am inclined to bifurcate the proceedings.  The first stage would be a jury trial on the question of Lederman's mental state for the False Claims Act claims.  The second stage would require determination of damages – at a minimum on the common law claims, and, if the government prevails at the first stage, on the FCA claims as well.  The parties are directed to file letters responding to this suggestion by Monday, August 4, 2014.

To conclude, the fully briefed motions in limine are still due by August 25.  The final pretrial conference will still be held on Monday, August 29, 2014.  The trial remains scheduled for September 8, 2014, and will now be to a jury.

So ordered.


John Gleeson, U.S.D.J.


Dated: July 29, 2014
       Brooklyn, New York